**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOLIE L. STORM, as Administrator of Estate of**
**Michael K. Storm d/b/a Storm Construction,**

                                        **Plaintiff,**

                    **v.**                                                    **1:02-CV-707**
                                                                               **(FJS/DRH)**
**AQUATIC BUILDERS, LTD. and LIBERTY**
**MUTUAL INSURANCE COMPANY d/b/a**
**Liberty Bond Services,**

                                        **Defendants.**
_____

**APPEARANCES**                                  **OF COUNSEL**

**PHILLIPS, LYTLE, HITCHCOCK,**                  **EDMUND C. BAIRD, ESQ.**
**BLAINE & HUBER LLP**
1400 First Federal Plaza
28 East Main Street
Rochester, New York 14614
Attorneys for Plaintiff

**COUCH WHITE, LLP**                             **JOEL M. HOWARD, III. ESQ.**
540 Broadway
P.O. Box 22222
Albany, New York 12201-2222
Attorneys for Defendants Aquatic
Builders, Ltd. and Liberty Mutual
Insurance Company

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Currently before the Court is Defendants' renewed motion for judgment as a matter of law

pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, in which they seek dismissal of

Plaintiff's claims and judgment as a matter of law to Defendant Aquatic Builders on its

counterclaim in the sum of $75,487.15.


## II. BACKGROUND

In her complaint, Plaintiff alleges claims against Defendant Aquatic Builders for breach

of contract arising from the construction of certain structures for the Roseland Water Park

Project.  Specifically, Plaintiff contends that Defendant Aquatic Builders breached an express

provision of the contract by wrongfully terminating Storm Construction and that it breached an

implied provision of the contract by failing to correct weather-related site conditions to facilitate

access to the job site.  In response, Defendant Aquatic Builders filed a counterclaim, asserting

that Storm Construction breached the contract by abandoning the work site and its obligations

under the contract.

The Court conducted a jury trial in this action on March 1, 2, 3, 4, 7, and 8, 2005.  At the

close of Plaintiff's case, Defendants moved for judgment as a matter of law; and the Court

reserved decision.  At the close of all the evidence, Defendants renewed their motion; and the

Court once again reserved decision and submitted the case to the jury.  After approximately one

and one-half days of deliberation, the jury was unable to reach a verdict; and, after dismissing the

jury, the Court declared a mistrial.  Subsequently, Defendants filed the renewed motion for

judgment as a matter of law that is currently before the Court.

**III. DISCUSSION**

**A.     Rule 50 of the Federal Rules of Civil Procedure**

Under Rule 50(a)(2), "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury.  The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).  "If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b).  "In ruling on a renewed motion, the court may: . . . (2) if no verdict was returned: . . . (A) order a new trial, or (B) direct entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(2).

Defendants argue that they are entitled to judgment as a matter of law because Plaintiff failed (1) to prove that Defendant Aquatic Builders prevented Storm Construction from performing its work, (2) to prove that Defendant Aquatic Builders terminated Storm Construction, (3) to prove breach-of-contract damages, and (4) to offer a defense to Defendant Aquatic Builders' counterclaim.

In response, Plaintiff argues that (1) a reasonable jury could find that Defendant Aquatic Builders breached its implied duties regarding the site conditions, (2) a reasonable jury could find that Defendant Aquatic Builders wrongfully terminated Storm Construction, (3) Defendants waived their argument that her calculation of damages is insufficient as a matter of law because they failed to object to her evidence at trial, (4) Defendants' attorney's affidavit regarding damages is inadmissible, (5) Defendants' attorney's opinions expressed in his affidavit are unreliable, (6) Defendants waived their argument regarding the double counting of overhead

expenses by not objecting during trial, and (7) Defendants are not entitled to judgment as a

matter of law on their counterclaim because Defendant Aquatic Builders breached its contract

with Storm Construction.

As noted, Plaintiff's complaint contains two causes of action.  However, she has, in fact,

asserted only one claim – a breach-of-contract claim – based upon two different theories of

recovery, either of which, she argues, justifies Storm Construction's failure to complete the

performance of its obligations under the contract.  In other words, she contends that, if the Court

finds that she presented sufficient evidence at trial to support either one of her theories of

recovery – (1) that Defendant Aquatic Builders failed to remedy the problems with the site

conditions, thereby making it impossible for Storm Construction to complete its performance

under the contract or (2) that Defendant Aquatic Builders wrongfully terminated Storm

Construction – the Court must deny Defendants' Rule 50 motion in its entirety.  The Court will

address each of Plaintiff's theories in turn.[1]

---

[1] Under New York law, one element of a breach-of-contract claim is that the party
seeking recovery has completely performed its obligations under the contract.  *See Dweck Law
Firm, L.L.P. v. Mann*, 340 F. Supp. 2d 353, 360 (S.D.N.Y. 2004).  On the other hand, "[a] claim
for breach of the covenant of good faith and fair dealing, . . . has no such requirement." *Id.*
(citation omitted).  Rather, "a claim for breach of the covenant of good faith and fair dealing
addresses precisely the type of situation [that is present in this case] where one party is harmed
by its *inability* to fulfill its obligations under the contract *because* of the bad faith actions of the
other party." *Id.* (footnote omitted).  In this case, there is no dispute that Storm Construction did
not complete its obligations under the contract.  In fact, Plaintiff seeks to recover from
Defendants on the theory that Defendant Aquatic Builders acted in bad faith when it terminated
Storm Construction and/or when it failed to take appropriate action to remedy the problems that
the weather caused at the job site, thereby making it impossible for Strom Construction to fulfill
its obligations under the contract.  Thus, although Plaintiff characterizes her claims against
Defendants as breach-of-contract claims, it is more accurate to characterize these claims as
claims for breach of the covenant of good faith and fair dealing.

**B.**     **Defendant Aquatic Builders' actions and obligations vis-a-vis the poor site conditions**

"Under New York law, each party to a construction contract impliedly agrees 'not to hinder or obstruct [the other's] performance.'" *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1007 (2d Cir. 1991) (quotation and other citation omitted).  In fact, "each party has an affirmative obligation to facilitate the other's performance." *Id.* (citation omitted).  This implied obligation, commonly referred to as the covenant of good faith and fair dealing, "includes an implied undertaking on the part of each party to the contract that each will not intentionally or purposely do anything to prevent the other party from carrying out the agreement on [its] part." *Designers North Carpet, Inc. v. Mohawk Indus., Inc.*, 153 F. Supp. 2d 193, 196 (E.D.N.Y. 2001) (citation omitted).  Nevertheless, "'absent a contractual commitment to the contrary, a prime contractor is not responsible for delays that its subcontractor may incur unless those delays are caused by some agency or circumstance under the prime contractor's direction or control.'" *Port Chester Elec. Constr. Corp. v. HBE Corp.*, 978 F.2d 820, 822 (2d Cir. 1992) (quotation omitted).

There is no dispute that Storm Construction did not complete its work under the contract. Furthermore, the parties agree that the excessive rain and the watery conditions of the wetlands that were adjacent to the job site caused the muddy conditions that made construction more difficult than it would have been had conditions been drier.  Thus, there are only two issues for the Court to resolve: (1) whether the muddy conditions prevented Storm Construction from completing its work and (2) whether Defendant Aquatic Builders either caused these conditions or had the ability to control or correct the poor site conditions; and, if so, to what extent, if any, it

was required to do so.

Plaintiff argues that the job site conditions were so bad that they prevented Strom Construction from performing its obligations.  Specifically, Plaintiff asserts that the site conditions required Storm Construction to spend extra money and resources in an attempt to complete the project and that these extra expenses prevented Storm Construction from fulfilling its contractual obligations.

Although both parties agree that the site conditions were less than optimal, Plaintiff presented no evidence at trial to show how, or the extent to which, these conditions caused Storm Construction's failure to complete its work under the contract.  In addition, the trial evidence showed that Michael Storm, President of Storm Construction, toured the job site prior to bidding on the job and that, during that tour, Michael Russo, Defendant Aquatic Builders' director of construction, told Mr. Storm about the site conditions, specifically that the site bordered wetlands and that the soil was comprised of clay and non-drainable soil that would not absorb water, making conditions wet, muddy, and possibly undriveable if there was too much precipitation. Thus, Mr. Storm bid on the project with full knowledge that the site conditions could deteriorate depending upon the weather conditions.

Nonetheless, despite knowing that the site conditions could become very difficult, Mr. Storm projected that he and seven other men would be able to complete the project by April 15, 2001, more than one month before the Memorial Day weekend deadline set in the contract.  Mr. Storm also testified that, when he ceased work on the project on May 16, 2001, a little less than two weeks before the contract deadline, he was 98% done with the project.  Furthermore, Plaintiff acknowledges that, by the end of April, two weeks before Storm Construction ceased

working at the site, conditions had begun to improve.  Finally, in their Joint Pretrial Stipulations, the parties agreed that there was "only one written Change order due to 'poor soils and water conditions,' in the amount of $6,821 on Change Order #3 dated April 18, 2001," *see* Joint Pretrial Stipulation at ¶ 3(i), and that "the Project Team Meeting Minutes dated April 17, 2001 reflect that [Mr. Storm] said [Storm Construction] was 'having no problems as far as access to [the] buildings,'" *see id.* at ¶ 3(k).

Based upon this evidence, the Court finds that no reasonable jury could conclude that the poor site conditions were the cause of Storm Construction's failure to complete its work under the contract.

Alternatively, even if the Court were to conclude that Plaintiff had presented sufficient evidence from which a reasonable jury could find that the muddy site conditions prevented Storm Construction from completing its work, the Court would still have to find that Defendant Aquatic Builders either caused these conditions or had an obligation to correct these conditions.[2]

The evidence at trial demonstrated that Defendant Aquatic Builders took affirmative steps to correct the site conditions that made it difficult for Storm Construction and its subcontractors to access the construction site.  In fact, Defendant Aquatic Builders tried several different tactics to alleviate the situation, including regrading the road, putting additional gravel on the road, pumping excess water from the roads, and creating new access roads when old ones failed. Nonetheless, although Plaintiff acknowledges that Defendant Aquatic Builders took these steps, she argues that Defendant Aquatic Builders breached its duty of good faith and fair dealing by

---

[2] Clearly, since the poor site conditions were the direct result of inclement weather, Defendant Aquatic Builders did not cause these conditions.

not doing more to address and alleviate these problems.

As noted above, in order to prevail on a claim that the defendant breached its duty of good faith and fair dealing, a plaintiff must show that it was unable to fulfill its obligations under the contract because the defendant did not make a good faith effort to correct the situation. Plaintiff did not meet this burden. First, Defendant Aquatic Builders specifically warned Mr. Storm, before he bid on the contract, that conditions would worsen if there was a significant amount of rainfall. Furthermore, when site conditions deteriorated, Defendant Aquatic Builders made numerous, albeit not entirely successful, attempts to alleviate the problem. Although Storm Construction was not satisfied with the results of Defendant Aquatic Builders' efforts to ameliorate the problem, there is nothing in the record to indicate that Defendant Aquatic Builders acted in bad faith. Finally, there is nothing in the contract, other than the implied covenant of good faith and fair dealing, which Defendant Aquatic Builders did not breach, that required Defendant Aquatic Builders to take any measures to correct the site conditions, no matter how bad they became.

Based upon this evidence, the Court finds that the delays and extra expenses that Plaintiff claims Storm Construction incurred, resulting in its inability to complete its work under the contract, were not caused by any circumstances under Defendant Aquatic Builders' control. Accordingly, the Court grants Defendants' Rule 50 motion for judgment as a matter of law with respect to Plaintiff's breach-of-contract claims to the extent that those claims are based upon this theory of recovery.

**C.       Storm Construction's failure to work at the job site after May 16, 2001**

The contract between Storm Construction and Defendant Aquatic Builders provides, in

pertinent part, that

> [s]hould [Storm Construction] fail to satisfy contractual
> deficiencies within three working days from receipt of [Defendant
> Aquatic Builders'] notice, then [Defendant Aquatic Builders],
> without prejudice to any right or remedies, shall have the right to
> take whatever steps it deems necessary to correct said deficiencies
> and charge the cost thereof to [Storm Construction], who shall be
> liable for payment of same, including reasonable overhead, profit,
> and attorney's fees.

*See* Plaintiff's Trial Exhibit "9" at Article 5.

The evidence presented at trial showed that, on May 16, 2001, Thomas Kidd, an

employee of Ultra Sash, Inc., one of Storm Construction's subcontractors, notified Defendant

Aquatic Builders that he would pull his men and materials off the construction site.  When Mr.

Kidd began to remove building materials from the site, Defendant Aquatic Builders called the

police; and, after the second call, the police escorted Mr. Kidd and his crew off the site.

On the same day, Defendant Aquatic Builders sent Storm Construction a letter, stating

that it deemed "Storm Construction's . . . refusal to man the job today to be a breach of your

subcontract with us for construction work at the above project and a termination of that contract."

*See* May 16, 2001 Letter from Defendant Aquatic Builders to Storm Construction.  There is no

dispute that Storm Construction did not work on the site after May 16, 2001.  Furthermore, the

evidence shows that, upon receiving Defendant Aquatic Builders' letter notifying Storm

Construction that Defendant Aquatic Builders considered it to have breached the contract, Storm

Construction made no attempt to contact Defendant Aquatic Builders to discuss the matter or to

cure the breach within three days of the notification or at any other time.

Based upon this evidence, the Court finds that the only conclusion that a reasonable jury could reach is that Defendant Aquatic Builders provided Storm Construction with the required notice of its alleged breach of contract and that, despite that notice, Storm Construction did not attempt to cure the alleged breach or to contact Defendant Aquatic Builders, in any manner, to work out a solution.  Thus, the Court concludes that no reasonable jury could find that Defendant Aquatic Builders breached the covenant of good faith and fair dealing by terminating Storm Construction.  Accordingly, the Court grants Defendants' Rule 50 motion for judgment as a matter of law with respect to Plaintiff's breach-of-contract claims to the extent that those claims are based upon this theory of recovery.[3]

### D.    Defendant Aquatic Builders' counterclaim

As noted above, Article 5 of the contract between Storm Construction and Defendant Aquatic Builders provides that, if Defendant Aquatic Builders notifies Storm Construction of perceived contractual deficiencies and Storm Construction does not correct these deficiencies within three days of receiving notice, Defendant Aquatic Builders "ha[s] the right to take whatever steps it deems necessary to correct said deficiencies and charge the cost thereof to [Storm Construction,] who shall be liable for payment of same, including reasonable overhead, profit, and attorney's fees."  *See* Plaintiff's Trial Exhibit "9" at Article 5.  Since Defendant Aquatic Builders provided Storm Construction with the required notice and Storm Construction

---

[3] Since the Court has determined that Plaintiff cannot prevail on her breach-of-contract claims under either theory of recovery, the Court does not need to address Defendants' argument that Plaintiff failed to prove breach-of-contract damages.

-10-

made no effort to cure the deficiencies, Defendant Aquatic Builders hired another contractor to complete Storm Construction's work.  As a result, Defendants contend that "the Court should award judgment in favor of [Defendant] Aquatic [Builders] based on its costs to complete less Storm Construction's contract balance, or $75,487.15."  *See* Defendants' Memorandum of Law at 9.

In response, Plaintiff does not take issue with Defendant Aquatic Builders' calculation of its costs.  Rather, Plaintiff argues that Defendants are not entitled to judgment as a matter of law on Defendant Aquatic Builders' counterclaim because a reasonable jury could find that Defendant Aquatic Builders breached the contract.  *See* Plaintiff's Memorandum of Law at 11.

Based upon the language of the contract and Defendant Aquatic Builders' compliance with the notice requirement, the Court grants Defendants' motion for judgment as a matter of law with respect to Defendant Aquatic Builders' counterclaim in the amount of $75,487.15.

In addition to its costs to complete Storm Construction's work, Defendant Aquatic Builders requests an award of attorney's fees.  Rule 54(d)(2) of the Federal Rules of Civil Procedure "allows motions for recovery of attorney fees if there is a 'statute, rule, or other grounds entitling the moving party to the award.'"  *Cong. Sec., Inc. v. Fiserv Sec., Inc.*, Nos. 02 Civ. 3740, 02 Civ. 7914, 02 Civ. 6593, 02 Civ. 8364, 2004 WL 829028, *3 (S.D.N.Y. Apr. 15, 2004) (quotation and footnote omitted).  "Under New York law, when a contract provides for the payment of attorney's fees and expenses, the court must order the losing party to pay the amounts actually incurred by the prevailing party."  *SONY Music Entm't Inc. v. Pedestal Prods., Inc.*, No. 01 CIV. 4033, 2002 WL 1226861, *4 (S.D.N.Y. Apr. 9, 2002) (citation omitted).

Since Defendant Aquatic Builders has prevailed on its counterclaim and Article 5 of its

contract with Storm Construction provides for an award of attorney's fees to the extent that those fees are associated with the steps that Defendant Aquatic Builders deemed necessary to correct Storm Construction's contractual deficiencies, i.e., Storm Construction's failure to complete its work at the site, the Court grants their request for an award of attorney's fees.  However, before the Court can determine the amount of that award, the Court requires further information.  It is not clear to the Court what "steps" the contractual provision regarding attorney's fees encompasses.  Although it appears that Defendant Aquatic Builders would be entitled to an award of attorney's fees that it expended in pursuing its counterclaim, it is not clear that this provision also allows for an award of attorney's fees to compensate Defendant Aquatic Builders for the monies it expended to defend against Plaintiff's breach-of-contract claims.  Therefore, the Court instructs Defendants to submit a memorandum of law, of no more than five pages, addressing this issue, as well as detailed documentation, including contemporaneous time records, to support their request for an award of attorney's fees.

### IV. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' renewed motion for judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, is **GRANTED** with respect to all of Plaintiff's claims; and the Court further

**ORDERS** that Defendants' renewed motion for judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, is **GRANTED** with respect to Defendant

Aquatic Builders' counterclaim in the amount of **$75,487.15**; and the Court further

**ORDERS** that Defendants' request for an award of attorney's fees is **GRANTED**; and the Court further

**ORDERS** that, **within twenty days of the date of this Order**, Defendants shall file with the Court and serve upon opposing counsel a memorandum of law, of not more than **five pages**, addressing the issue of the extent of the "steps" for which Article 5 of the contract between Storm Construction and Defendant Aquatic Builders provides for an award of attorney's fees, as well as detailed documentation, including contemporaneous time records, to support their request for an award of attorney's fees; and the Court further

**ORDERS** that, **within forty days of the date of this Order**, Plaintiff shall file with the Court and serve upon opposing counsel, her papers in opposition to Defendants' request for an award of attorney's fees, if any, including a memorandum of law, **of not more than five pages**, addressing the issue of the extent of the "steps" for which Article 5 of the contract between Storm

Construction and Defendant Aquatic Builders provides for an award of attorney's fees; and the

Court further

     **ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case.[4]

**IT IS SO ORDERED.**

Dated: May 10, 2007
       Syracuse, New York

                                       Frederick J. Scullin, Jr.
                                       Senior United States District Court Judge

---

[4] When the Court determines the amount of attorney's fees to which Defendant Aquatic Builders is entitled, the Court will instruct the Clerk of the Court to amend the judgment accordingly.

-14-