UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOLIE L. STORM, as Administrator of the
Estate of Michael K. Storm,

       **Plaintiff,**

    v.            1:02-CV-707
                   (FJS/DRH)

AQUATIC BUILDERS, LTD.; LIBERTY
MUTUAL INSURANCE COMPANY d/b/a
LIBERTY BOND SERVICES;
CANANDAIGUA RECREATION
DEVELOPMENT CORPORATION;
CANANDAIGUA NATIONAL BANK &
TRUST COMPANY; CANANDAIGUA
MESSENGER, INC.; MATTHEWS &
FIELDS LUMBER OF HENRIETTA, INC.;
ESCO OF CANANDAIGUA, INC.;
COMMONWEALTH LUMBER COMPANY;
EAST SIDE CARPENTRY, INC.; and
RUTNER-IRON CO., INC.,

       **Defendants.**
_____

**APPEARANCES**            **OF COUNSEL**

**PHILLIPS LYTLE LLP**        **EDMUND C. BAIRD, ESQ.**
1400 First Federal Plaza       **JOHN L. DEMARCO, ESQ.**
28 East Main Street
Rochester, New York 14614
Attorneys for Plaintiff

**COUCH WHITE LLP**        **JOEL M. HOWARD, III, ESQ.**
540 Broadway           **JEREMY M. SMITH, ESQ.**
Albany, New York 12201
Attorneys for
Defendant Aquatic Builders, Ltd.

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

In her complaint, Plaintiff[1] alleged claims against Defendant Aquatic Builders, Ltd. ("Aquatic") for breach of contract arising from construction of the Roseland Water Park Project for wrongfully terminating Storm Construction and for failing to correct weather-related site conditions. Defendant Aquatic filed a counterclaim asserting that Storm Construction abandoned the work site and its contractual obligations.

Following a jury trial that ended in a mistrial after the jury failed to reach a verdict, this Court granted Defendants Aquatic and Liberty Mutual Insurance Company's motion, pursuant to Rule 50, for judgment as a matter of law with respect to all of Plaintiff's claims and in favor of Defendants' counterclaim in the amount of $75,487.15.

Furthermore, the Court granted Defendant Aquatic's request for an award of attorney's fees, finding that the parties' contract provided for recovery of attorney's fees to the extent they were associated with the steps necessary to correct Plaintiff's contractual deficiencies. The Court, however, requested further briefing as to what "steps" the contract encompassed and expressed uncertainty whether the contract encompassed the attorney's fees expended to defend against Plaintiff's breach-of-contract claims. The Court requested a short memorandum of law on this issue as well as documentation and contemporaneous time records to support Defendant Aquatic's claim. The Court also provided Plaintiff with an opportunity to respond to Defendant

---

[1] Plaintiff is the administrator of the Estate of Michael K. Storm, who did business as Storm Construction prior to his death. The contract at issue in this action was between Storm Construction and Defendant Aquatic Builders, Ltd.

Aquatic's submissions. Defendant Aquatic filed the required papers, and Plaintiff responded.[2] The following constitutes the Court's written calculation of the amount of attorney's fees that Defendant Aquatic is entitled to recover.

### III. DISCUSSION

**A.     The parties' contract**

Article 5 of Defendant Aquatic's contract with Storm Construction provides for the recovery of "'reasonable . . . attorney's fees'" for the "'steps [Aquatic] deems necessary to correct [contractual] deficiencies.'" *See* Memorandum-Decision and Order dated May 10, 2007 at 9 (quoting Plaintiff's Trial Exhibit "9" at Article 5). "Under New York law, when a contract provides for the payment of attorney's fees and expenses, the court must order the losing party to pay the amounts actually incurred by the prevailing party, 'so long as those amounts are not unreasonable.'" *Sony Music Entm't Inc. v. Pedestal Prods., Inc.*, No. 01 CIV. 4033, 2002 WL 1226861, *4 (S.D.N.Y. Apr. 9, 2002) (quotation omitted).

Despite the interconnected nature of the defense of Plaintiff's claim and the pursuit of Defendant's counterclaim, the Court finds, after reviewing the parties' submissions, that, under the contract, the steps necessary to correct Plaintiff's contractual deficiencies is limited to the litigation of Defendant's counterclaim. Furthermore, the Court notes that Plaintiff presented two theories of recovery on her breach of contract claim: (1) failure to remedy problems with site

---

[2] In her response, Plaintiff requested an inquest concerning Defendant Aquatic's application for attorney's fees. Plaintiff did not provide, and the Court is not award of, any authority requiring the Court to hold such a proceeding. The Court has received Plaintiff's opposition and will resolve Defendant Aquatic's application on the parties' written submissions.

conditions and (2) wrongful termination of Storm Construction. *See* Memorandum-Decision and Order dated May 10, 2007 at 4. In addressing the counterclaim, the Court only referenced its discussion of Plaintiff's second theory of recovery. *See id*. at 11. The Court notes that Plaintiff's breach of contract claim was broader and involved additional issues not present in Defendant's counterclaim. Accordingly, the Court will grant attorney's fees only for the work associated with Defendant Aquatic's counterclaim.

## B.     Reasonable hourly rate

To determine an appropriate award of attorney's fees in the Second Circuit, a district court should determine the "reasonable hourly rate . . . [that] a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The court should consider the *Johnson*[3] factors as well as the following: the fact that a "paying client wishes to spend the minimum necessary to litigate the case effectively" and the benefits to the attorney's reputation for being associated with the case. *Id*. Finally, "[t]he district court should use that reasonable hourly rate to calculate what can properly be termed the 'presumptively reasonable fee.'" *Id*.

The Court finds that, after considering all the factors above and the parties' submissions,

---

[3] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). "The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 187 n.3 (citing *Johnson*, 488 F.2d at 717-19).

the following rates are reasonable in this case: $210 for experienced attorneys; $150 for attorneys with more than four years, but less than ten years, experience; $120 for attorneys with four or fewer years of experience; $80 for paralegals**;** as well as one-half those rates for travel time (except where Defendant Aquatic's attorneys' billing rates are lower than these figures). *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F. Supp. 2d 206, 211 (N.D.N.Y. 2005).

### C.     **Contemporaneous time records**

Defendant Aquatic submitted time records in the form of invoices it received from its counsel for the time spent on this matter. However, the invoices that Defendant Aquatic submitted include charges related to state-court actions and audit letters. The Court finds that, from what the Court can glean from Defendant Aquatic's counsel's time records, Defendant Aquatic was litigating state-court actions relating to liens prior to the filing of Plaintiff's complaint in this action.[4] The Court denies Defendant Aquatic attorney's fees for time that its counsel expended in any state-court actions, both before and after the filing of Plaintiff's complaint. Further, the Court excludes the time Defendant Aquatic's attorneys billed for drafting audit letters for Defendant Aquatic.

Finally, as noted above, the Court must exclude the time spent defending Plaintiff's claims. Defendant asserts that it is impossible to separate the time spent on the counterclaim and the time spent on the defense and suggests that, if the Court only awards the portion related to

---

[4] Defendant Aquatic's attorneys also submitted a few time records after the filing of the complaint, which also related to addressing state-court proceedings.

the counterclaim, the Court use a ratio for the amount of damages sought by Plaintiff and Defendant in their respective claims.  *See* Affidavit of Joel M. Howard, III, Esq. dated May 23, 2007 at ¶ 11.  Plaintiff contends that Defendant must show their attorney's fees with reasonable certainty and opposes the use of a ratio.  *See* Affidavit of Chad W. Flansburg, Esq. dated June 25, 2007 at

¶¶ 6-7.  Upon review of Defendant's submission, the Court agrees that delineating the time based on the time records is not possible.  In the context of assigning fees for limited success, as an alternative to identifying and subtracting hours spent on unsuccessful claims, "the court can 'simply reduce the award . . . .'"  *Separ v. Nassau County Dep't of Soc. Servs.*, 327 F. Supp. 2d 187, 190-91 (E.D.NY. 2004) (applying a percentage reduction in the context of reducing a fee to account for unsuccessful claims); *see also Lillbask v. Conn.*, No. 3:97 CV 1202, 2006 WL 752872, *6-*7 (D. Conn. Mar. 17, 2006) (granting a lump sum award where it was impossible to determine which claims were being pursued at a given time).  Accordingly, the Court finds that it was reasonable that forty percent (40%) of Defendant's counsel's time was spent litigating Defendant's counterclaim.

The Court grants Defendant Aquatic attorney's fees based on Defendant Aquatic's submissions for the following timekeepers and the following rates and hours:[5, 6]

---

[5] The Court notes that, where specific hours or dollar amounts were written down from specific timekeepers' time, the Court used those write downs to calculate the hours billed; however, the Court did not include general write-offs from the amount billed under the higher billing rates.

[6] Defendant Aquatic did not provide the titles (partner, associate, paralegal) or years of experience for the timekeepers in this matter, except for Attorney Howard.  Accordingly, the Court performed searches of New York attorneys on www.martindale.com and determined that
(continued...)

| **Timekeeper** | **Rates Billed[7]** | **Reasonable Rate** | **Hours Billed** | **Fees** |
|---|---|---|---|---|
| Joel M. Howard | $250-$300 | $210 | 151.6 | $31,836.00 |
|  |  | $105 (travel) | 6.5 | $682.50 |
| Stephen Buhr | $175 | $150 | 228.8 | $34,320.00 |
| Michael J. Murphy | $80 | $80 | 0.8 | $64.00 |
| James J. Barriere | $200-$250 | $200 | 0.5 | $100.00 |
|  |  | $210 | 126.4 | $26,544.00 |
|  |  | $105 (travel) | 4 | $420.00 |
| Jeremy M. Smith | $160-$185 | $120 | 242.1 | $29,052.00 |
|  |  | $60 (travel) | 10 | $600.00 |
| John J. Dowd | $175-$180 | $120 | 0.9 | $108.00 |
|  |  | $150 | 1.1 | $165.00 |
| David G. Anderson | $235 | $210 | 11.3 | $2,373.00 |
| Thais Triehy | $95 | $80 | 15.8 | $1,264.00 |
| Joseph B. Carr | $200 | $200 | 0.3 | $60.00 |
| Stephen M. Macnish | $95 | $80 | 0.3 | $24.00 |
| Jessica Z. Calarco | $80 | $80 | 20.7 | $1,656.00 |
| **TOTAL** |  |  |  | $129,268.50 |

---

[6](...continued)
the following Couch White attorneys were admitted in the following years: Joel M. Howard, 1972; David G. Anderson, 1982; James J. Barriere, 1993; John J. Down, 1998; and Jeremy M. Smith, 2002. Furthermore, the Court found records for a Joseph B. Carr, admitted in 1976 and a Stephen Buhr, admitted in 1995, with addresses in Albany, New York, though currently unaffiliated with Couch White. With regard to the work of Ms. Triehy, Mr. Murphy, Mr. Macnish and Ms. Calarco, the Court will use the hourly rate for paralegal work.

[7] The "Rates Billed" column includes the rates set forth in the contemporaneous time-records.

Accordingly, the Court awards Defendant Aquatic $51,707.40 in attorney's fees after applying the sixty percent discount to reach forty percent of Defendant Aquatic's counsel's time.

**D.	Costs**

In addition to attorney's fees, Defendant Aquatic requests reimbursement for the following: photocopying, telephone, postage, Federal Express, fax, electronic research, messenger services, court fees, outside printing, and witness fees in the amount of $7,202.08.[8]

### IV.  CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant Aquatic Builders, Ltd.'s motion for attorney's fees is **GRANTED** in the amount of $51,707.40 in attorney's fees and $7,202.08 in costs; and the Court further

**ORDERS** that the Clerk of the Court shall amend the judgment to include this award of attorney's fees and costs.

**IT IS SO ORDERED.**

Dated: March 31, 2009
	Syracuse, New York

*/s/ Frederick J. Scullin, Jr.*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[8] This figure excludes such costs charged contemporaneously with time billed to the state-court actions as well as Defendant Aquatic's attorney's charges for "Outside Professional Service" and "Misc.," which the Court excludes because it cannot determine the nature of these expenses.  The Court also excludes charges for travel and meals (beyond the timekeeper travel time documented above).  This figure includes a $5.47 write-off of expenses from the December 31, 2004 invoice.